All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its honorable court. Please be seated. We have just one argument to hear this morning. Number 151684, DSS Technology against Taiwan Semiconductor. Mr. Hurt. Thank you, Your Honor. Good morning. May it please the court, my name is Christian Hurt and I'm here today on behalf of DSS Technology Management Inc. This appeal raises a single issue, whether the patterned layer claimed in the 084 patent is limited to the same layer material as the imaging layer. And it is not. This patent relates to semiconductor manufacturing and it's undisputed that a patterned layer in that field is simply a layer that contains the pattern. Nothing in the ordinary meaning of that term narrows it, nor does any of the surrounding claim language, which simply requires that the imaging layer is used to form the patterned layer. Your argument requires that at least some, in some embodiments, the patterned layer is not the immediate result of patterning under the construction that you don't challenge of the term patterning, right? I don't believe so. And Your Honor mentioned embodiments. The embodiment in the spec, the preferred embodiment, is where the same layer, the imaging layer and the patterned layer are one and the same. Our argument does not depend on there being a separate embodiment disclosed in the specification of an underlying... Your position is that if you take the imaging layer and you put the mask on it and you irradiate it, and then a whole bunch of stuff melts away in one version or hardens in the other version, that the immediate result of that is the Swiss cheese of an imaging layer and that can be the patterned layer, but you want patterned layer to cover that as well as another layer that you use that to create another piece of Swiss cheese out of, right? That is correct. But patterning applies only to the first piece of Swiss cheese, does it not? So the full limitation is patterning the imaging layer, and I think this is where the confusion is on the agreed construction in some of the positions. Your Honor is right. Patterning the imaging layer, the parties have agreed that's the first piece of Swiss cheese, but that's not the end of that limitation. The remaining piece of the limitation is to form a patterned layer. Right, that's why I asked, but yours is not the immediate result of the irradiation. You want to take the first piece of Swiss cheese, I'm sorry about the metaphor, but it seems useful to me, tell me if it's wrong, and create another piece, and that other piece you want to be also covered by the term patterned layer at each of the first stages and the second stage. That is correct, and the specification, well first the claim language supports that by mentioning patterning the imaging layer to form a patterned layer. The district court effectively wrote to form as an active verb forms, but the claims don't say that. The claims do not say patterning an imaging layer wherein the patterning forms the patterned layer. Instead it says to form. I think the analogy we used in our brief was reading case law to form a legal opinion. Well that is a broader and more encompassing phrase than my reading case law forms my legal opinion. That's more tight and more exclusive between the two, the relationship of the two elements. There are two places in the spec, one in column one I think in the description of the prior art and then one if I remember right toward the end that expressly refer to, and again I'm going to use my Swiss cheese metaphor, after you've made the first slice you use familiar etching, what chemical or other techniques to create a second, to replicate the pattern of the first piece of Swiss cheese in another. Why would we not take those two passages as indicative of essentially what is not part of the claims, namely some reference to steps past the first irradiation patterning. Sure, I think there's two reasons for that. One is that this patent is about improving typical lithography processes. The background that your honor mentioned talks about in a typical lithography process, there's the first piece of Swiss cheese, and then that pattern is replicated underneath and the patent uses the term an underlying layer to be patterned. It actually uses the same words as the claim as patterning. Then in the second piece, which is in column 12, mentions that again the underlying layer can be patterned using that piece of Swiss cheese. There's no reason to exclude the typical lithography processes of doing the irradiation and development and then etching and then doing that effectively a second time. This patent is about what's called double exposure lithography and can use that typical process essentially twice. I don't read the background portion or the last portion in column 12 as any type of distinguishing statements about, well, here's what the prior art is or here's what our invention is not and here's what our invention is. There's no language indicating that the present invention is limited to the imaging layer and the pattern layer. I'm sorry, I have a grasp on this technology, but I can't claim to understand it completely. Is it your position that the first pattern layer can be formed by one process and the second patterning layer can be formed by an entirely different process? Well, it both says patterning and patterning, the parties have agreed, is exposure and development. In both steps, exposure and development has to happen. Really the question is, is that the end of the claim limitation or can there be additional steps to create a patterned layer that lies underneath the layer that's been exposed and developed? And so exposure and development has to happen for both the first imaging layer and the second one. The question then for each of them is, that's not the end of the claim limitation, it says to form a patterned layer and the specification indicates that that can include things like etching. I don't think you answered my question. Sure, Your Honor. I mean, the claim, I'm looking at claim one. I think its representative has a part talking about forming using a first imaging layer with the first pattern to form a first patterned layer, then it's got the stabilizing and stuff like that. And then it says patterning a second imaging layer with a second pattern to form a second patterned layer. Are those two parts using the same process in your view or can they use one being the first part where you, I guess, run the light through the mask and get a pattern and then the second one can be when you use that pattern to etch. So they can be different. I tried to explain it. Let me maybe try again. I'm trying to figure out whether the first and second pattern have to be formed by the same process or you think they can be formed by a different process. Because I know it goes on and then it says the second and the first are combined to form a single patterned layer. That's where it seems to be talking about a different kind of technical step. The first two seem to be parallel steps. They are. They both reference patterning the imaging layer to form the patterned layer. And the question is to form the patterned layer. Both require, under the agreed construction of patterning and imaging layer, exposure and development. So for that first one, there has to be exposure and development. For the second one, there has to be exposure and development. The question is, is that where the claim is closed when it mentions to form a patterned layer and to form could be exposure and development in addition to etching for the first pattern or not in addition to etching. So that's how they could be different. But they both, as a necessary input, have to have exposure and development of the imaging layer under the agreed construction. And the specification, I think, supports that when mentioning that you have, you know, the words of the claim are an imaging layer and a patterned layer. It's not a patterned imaging layer, as the defendant suggests. It's not a patterned photoresist layer. And I believe the portion of the specification that Judge Toronto mentioned in Column 1 mentions you have an imaging layer. The Swiss cheese is what's called a patterned photoresist layer. And then there's the underlying layer to be patterned. And our view is that any of the layers that contain that pattern, whether it's the patterned photoresist layer or the underlying layer that's etched, can constitute a patterned layer because the claim uses the term to form and the specification doesn't have any. Okay. Wade, I think you're finally getting to what I was thinking about. So you think that underlying layer that's etched can be the second patterned layer. Yes. Instead of being the final step where the two patterned layers form a single patterned layer. Well, there still has to be a single patterned layer at some point in the equation, which is where the two are combined. And this is coming to us as a matter of claim construction or as a matter of infringement or non-infringement? It's a matter of claim construction, Your Honor. So the district court held a Markman hearing, resolved this issue in a Markman order. There was no proceedings on summary judgment, no evidence presented to the district court. After the claim construction came down, the parties entered into a stipulated judgment. So we don't have anything in the record that tells us intuitively why under this construction the accused products do not infringe? We do in the stipulation. So in the stipulated judgment, which is on JA39, paragraph 5 specifically, what the defendants do is they use an intermediate layer. So there's the initial imaging layer, it's irradiated, developed, and then it ends up being etched into something called a hard mask. And that's what we pointed to as the first patterned layer. And because the court's construction excluded that, that's why we're here on appeal. And that's what paragraph 5 mentions, what DSS accused was a layer underlying that first imaging layer. And you're into your rebuttal time, but let me just ask you one more question. Do you think that Claim 1 in particular covers both positive tone and negative tone imaging layers? I do. So the patent discusses positive tone and negative tone. Claim 1 is agnostic as to which one is used, so I believe it covers both. Even though, as I read it, the claim construction of the term patterning seems to limit it to positive tone? Am I wrong about that? And this is the issue about the portions of the imaging layer that lay outside of the pattern, or what's dissolved? Yeah. I mean, doesn't that restrict it to positive tone? I don't believe so. So the positive flavor, negative flavor has to do with what's exposed. So if the pattern is my hand, positive tone is that the exposed portion dissolves, so the pattern would look like my hand coming up, and negative tone would be that the unexposed portion dissolves, which would be my hand coming down. There's nothing about exposed or unexposed portions in the construction. There's mention of stuff, of the material that lays outside of the pattern, but there isn't an indication of what pieces have been exposed to light and which pieces haven't been exposed to light. Does that make sense? Sure. Okay. Thank you. Thank you, Your Honor. We'll restore two minutes of your rebuttal. Good morning, Your Honors. I'm Jared Bobrow. I represent the Samsung Appellees. I'll be addressing the majority of the claim construction issues that have arisen here. Mr. Cunning, counsel for the TSMC Appellees, will be addressing a couple of issues. One is the claim differentiation issue that is part of that claim construction dispute, and the second has to do with the procedural deficiencies in DSS's appeal. As is often the case, I'm going to ask you about something you just said that your colleague is going to talk about because it's more on my mind, so I hope you're prepared. The claim differentiation argument. Yes. I understand the way of saying that Claims 4 and 5 are not redundant because they're positive tone, but I don't understand that if, contrary to what Mr. Hirt just said, if one read Claim 1 as limited itself to positive tone because of the way the undisputed claim construction of patterning works, which seems to require the dissolution of the irradiated parts, not the hardening of the irradiated parts. I think, Your Honor, with respect to the agreed upon construction, both parties agree, and you heard counsel for DSS state that it is agnostic as to whether it is positive or negative tone. Explain how that's possible given, and I could just be confused, but how is that possible given the definition, the agreed claim construction of the term patterning? Because I think that it's a function of what the pattern is. When you have a pattern with hard places or glass or what have you, and then open spaces where the radiation can get through, in one case where you have the positive tone and the radiation comes down and irradiates that, softens it and dissolves it, the negative is simply the reverse of that. When the agreed claim construction talks about laying outside of the pattern, that's simply talking about whether you're dealing with positive or negative as to what is outside of the pattern. The tone affects whether or not it is the parts that are subjected to the radiation that are outside the pattern or whether it's the parts that are not subjected to radiation that are outside the pattern. Both parties in coming up with this construction for the district court were endeavoring to provide a construction that would cover both situations as to tone, and then claims four and five covered the specific situation where it is the exposure to the radiation. And that is specifically a reference to a positive tone system, not to the negative tone system. And there are no specific claims referring to essentially counterparts to four and five, but referring to the negative tone ones? No, I don't believe so, Your Honor. But the claims four and five in terms of the exposing, that is a reference to positive tone. So as Mr. Hurt for counsel for DSS acknowledged, really the only issue on appeal has to do with the district court's construction of the claim term patterned layer. That is the only challenge on appeal, and we submit that the district court's judgment should be affirmed of non-infringement because there was simply no error in the district court's construction of patterned layer. That is because number one, the plain language of the claim, the natural reading of the claim language supports that construction. Number two, the agreed upon construction of patterning the image layer supports that construction. The specification fully supports the construction. And finally, the statements that DSS made during- support your position necessarily, as you say. It necessarily does, Your Honor, because of the phrasing and because of the natural- Walk me through, walk me through. Are you talking about patterning the first imaging layer? Yes, so that phrase- According to the first pattern, to form a pattern, first pattern layer. Well, to form it where? That's right. Why does the language limit where the first pattern layer, having a first feature, is formed? Because that phrase, for several reasons. First, you have a patterning step, patterning the imaging layer. Patterning is essentially the present participle. It is the active verb. It is what is being done. What is it being done to, to an object? The object is the imaging layer. So I am doing something presently to the imaging layer. To form is simply the infinitive, which is describing the result of the patterning on the object, namely the imaging layer. Aren't you- isn't in the background of your rationale here the agreed-upon claim construction of patterning? I think certainly- You're carrying that into the language with regard to what it is you're- where you're forming the first pattern layer. I think, Your Honor, that, that patterning the imaging layer to form the pattern layer, just the natural reading of that and the natural language of it supports it. But, but certainly the agreed construction makes it abundantly clear because the part- Doesn't the accused device pattern a first image layer on something other than the structure you're talking about? No, it doesn't because the agreed construction of patterning is that you irradiate an imaging layer and then you develop it. I know what the agreed construction of patterning is. It just seemed to me that the natural reading of the language itself, before you decide what patterning a first image means, didn't necessarily support what you were saying. But it is, again, the patterning of the imaging layer. Because what the patent is describing is a process where you pattern the imaging layer, that forms the patterned layer, you stabilize it, you form a second patterned layer, that then is consolidated into a single patterned layer, and then after that what's done is you use that, if you wish, it's not claimed, but you use that to then etch something in an underlying layer. And the specification, Your Honor, is very clear that the patterned layers are the portions of the imaging layers that remain after patterning. The exclusive use of that phrase, patterned layer, in the specification, is used solely and exclusively to describe the imaging layer after patterning. Is the imaging layer the photoresist material? So it is. One example, Your Honor, is photoresist. That can be positive or negative tone. But there are, in the specification, described additional materials besides photoresist. For example, polyimide can be a kind of radiation-sensitive material. The parties agreed below to a stipulated meaning of the imaging layer, and it's essentially a first imaging layer is a first layer of photoresist or other radiation-sensitive material. So it can be other things besides photoresist, photoresist being a common one but not the only one. And that's why Claims 4 and 5 are not redundant of Claims 2 and 3. That is one of the reasons. That is certainly one of the reasons that it's not. But you have in Claims 4 and 5, because Claims 4 and 5 depend on 1, you have Claim 1 agnostic on positive or negative tone, and then Claims 4 and 5 say, ah, we'll select the positive tone version. 2 and 3 say including photoresist, including positive photoresist, which again separates it from Claims 4 and 5 because you could have positive polyimide, you could have positive photoresist, you could have other positive radiation-sensitive material. So with respect to the specification again, driving the meaning here, as I alluded to, not only is the phrase patterned layer exclusively used to describe the imaging layer after patterning, but the specification goes on to say that the patterned layer, when it's describing how it's formed, what it describes in terms of how it's formed is it says that you put it into radiation and you develop it, and that that is what forms the patterned layer. And that's a consistent usage in the specification to say that it is the radiation and development of the imaging layer that forms the patterned layer. With respect to the agreed-upon construction, where the agreed-upon construction was essentially very consistent with what is in the specification, saying that you essentially have your imaging layer, you then expose it to radiation, you then develop it in a developer, and the parties agreed, and it's not challenged on appeal, that there's an additional clause there for the construction. When you do those things, you, quote, thereby form the patterned portions and spaces of the imaging layer. So what the parties agreed to was that the patterning of the imaging layer is driving, is immediately creating the patterned layer. The district court found that that phrase, thereby forming the patterned portions and spaces, that that is a reference to the claimed patterned layer. So you have this immediate creation of that patterned layer by development and radiation of the imaging layer. And that was the agreed-upon construction. And with that, Your Honor, I will turn it over to Mr. Cunning unless there are further questions for me. Thank you. Good morning, Your Honors. Scott Cunning, TSMC appellees, and since Mr. Bobrow already addressed the claim differentiation argument, unless the court has any other questions on that issue, I'm going to jump right into the procedural defects with DSS's appeal. There are two failures on DSS's part that prevent it from now challenging the district court's construction below. First, DSS agreed to the district court's construction. It did raise an issue regarding how that construction would be applied, but it did not challenge the district court's construction. It never asked the district court to modify its construction, and it at no point urged the construction it had originally sought in its briefing below. This is no different than what happened in the Solvay case. So the caveat is not a request for a different instruction? No. DSS asked an issue about clarification, and the court invited argument on that issue. But throughout its argument, DSS repeatedly stated that it agreed to the court's construction and that in its view the district court's construction adequately captured what it was arguing on the application of the construction. That's exactly what happened in the Solvay case. What's the caveat then? DSS wanted to know if the construction that the district court had issued could be read on an underlying layer. The argument they raised was one of application, not one of plain construction. And the district court made clear that it could not. If this case had proceeded, you don't think that this would have presented, teed up an O2 micro issue where it was perfectly clear that there was no dispute about the nature of the accused products and the only dispute was about the scope of the claims, whether you call it interpreting certain words or not? We think the case is not an O2 micro issue, Your Honor, because we're not disputing that there was a dispute below about how the construction would be applied. O2 micro did not present the issue of whether one party had consented to the district court's construction. That issue is expressly presented in the Solvay case. Consented to, but. I consent to, but. I understand Your Honor's question. But if you're going to apply your claim construction as X, then I don't agree with it. Is that what the caveat is? Yes, Your Honor, and that is exactly what happened in Solvay. Do you think there's clear daylight between this case and O2 micro? Yes. In the O2 micro case, there was no issue of whether a party had consented. The term at issue in O2 micro was the only if term. The parties repeatedly disagreed about how only if should be construed. The district court declined to construe it. The difference is the Solvay case where the parties had a dispute over the term isolating. The district court invited briefing on the issue. Solvay was arguing that isolating should mean permanently isolating. But in its briefing, it expressly stated that it agreed with the district court's construction and then submitted five additional pages of briefing arguing about how that construction should be applied. This court said that because Solvay had agreed to the construction and not asked the district court to change its construction and had never sought the permanently isolating construction that it was now advocating on appeal, it could not challenge the district court's construction on appeal. But the second failure is it's not just DSS's consenting to the construction below. Even on appeal, DSS has not proposed an alternative construction to this court. Their argument is about what the construction should cover and what it should be applied to. That is the second step. They're making an argument here that they're agreed upon construction that you're trying to nail them is limited to one step in the procedure. They're saying, well, when we agreed on patterning the first and second image layer, what we meant was, oh, that's just that one step. We didn't mean that to apply the entirety of the application of the claim. I mean, they're making to me, their argument here is a very nuanced argument of a caveat. I don't know whether they presented to the district court in full bloom the nuanced argument they've made here, but it seemed to me that they were trying to put a stake in the ground of the district court saying we're buying your claim construction up to a point. I understand that, Your Honor. The distinction is that at no point did they ask the district court to modify its construction or to change the construction. That is what the Salve case and the Fingen case state. We have a case that says you must make a specific request for a specific modification in order to preserve a claim construction argument on appeal. The closest cases are the Salve case in our brief and the Fingen case in our brief. In Fingen, the court stated that the complaining party must present an alternative construction on appeal and that is the second aspect of DSS's failure. It seems to me they are making a nuanced distinction here on appeal. I think that they're making an argument about application of the construction. In their opening brief, DSS presents the issue as whether or not the district court's claim construction excludes an accused instrumentality and asks this court to give an instruction that would allow them to capture an underlying layer. But the court, that's application. That goes back to Markman, that we first construe claims, then we talk about what claims cover. DSS has never presented this court with a clear formulation of what it believes the claim construction should be. I guess I took the claim construction that they're offering to be the insertion of the words immediately or indirectly, form immediately or indirectly. I searched through their briefing to try to identify a place where they... Did you have any doubt about that's what they meant? Several times they described the construction as they wanted to cover an underlying layer. They state in places that it should refer to a pattern imaging layer, the same pattern in the imaging layer, the same pattern in the mask. I'm not quite sure what exactly the construction is. And if DSS had presented this court with a formulation of its construction, it's not entirely an academic exercise. We would then be able to talk about how that construction fits within the specification and the intrinsic record. Unless the court has any additional questions. Thank you for your argument. Can I add three minutes, please? Very briefly, Your Honor. Mr. Barrow made a number of statements about the specification, indicates the specification describes it's undisputed that the specification lacks any disclaimer, present invention, language, distinguishing the prior, or anything that would narrow the claims to the embodiment in the specification. Notably in their brief, they mentioned that figure one was the claimed invention. The figure one is just an embodiment. The issue is what does two-form mean? The construction of patterning and imaging layer that we agreed to below is only patterning and imaging layer. And everyone agrees that that phrase, that upon development, there are patterned portions and spaces of the imaging layer. Does the spec ever use the word form as a verb or otherwise to refer to something other than the immediate result of the forming activity? That's probably imprecise, of the patterning activity. In the preferred embodiment, it uses the word two-form as the same immediate layer. It refers to how features may be formed relatively closer to one another. And that's forward-looking, so the ultimate features in the semiconductor are the circuit components and the patterning components. I just wanted to bring you back to the passages that to me are most significant, the column one and the column 12, where when there is talk about creating this pattern in a layer underlying the irradiated layer, different terms are used, the lithography terms, the etching terms. That is true. The word, I think, is maybe replicated. Replicated. And that's in both column 12 and I believe also column one, maybe replicated. Your case hinges on column 12, those two references, and on your statement that there's nothing in the specification that disclaims what you call the second flavor. I was taken by the honesty of your brief at the very end on page 25, where you say there's nothing in the spec other than those two points that support my argument. That is correct. You get an A-plus on candor. Thank you, Your Honor. As I read the specification, there's really two kind of ways to slice it. In the way that we agreed to pattern an imaging layer to form a pattern layer, those two portions of the spec and the words to form indicate that that limitation is broader. But then, as Judge Clevenger mentioned, on first blush, without the agreed construction, patterning and imaging layer to form a pattern layer, both of those portions of the specification in column one and column 12 refer to that underlying layer as one to be patterned. It says it is patterned via etching, and it uses the same words as the claims. If this is some type of gotcha on us agreeing to that particular construction, then I think that's what we are working on. Ken wasn't exactly using a megaphone to broadcast to the public the breadth of the claim as you asserted here today. Very briefly, I know I'm going to pass very briefly on this waiver issue. This issue, the scope of the claims is as clear as day what the parties are disputing. Whether the imaging layer material is limited, the pattern layer is limited, that imaging layer material can have a pattern underneath. The court resolved that in eight-page claim construction order. The defendant's argument is that because DSS agreed to the words of the court's proposed construction, which didn't answer the issue, because the court took half of ours and half of theirs and put it together, so it took ours, a layer containing the portions and spaces of the imaging layer and superimposed those, that somehow DSS has waived that argument on appeal. We cited O2 micro and the other cases that simply say that if the district court is on notice where your claim construction position is, you don't even have to object to the jury instruction to get up on appeal and make those arguments. Did you offer a specific formulation of an alternative claim construction that you would prefer the district court to have adopted? We did. We're kind of in a tight bind on this because DSS agreed to the words of the court's claim construction. Then the court sort of issued a construction of a construction in the claim construction order to avoid the O2 micro problem, I think, that Your Honor mentioned. We initially had proposed a layer containing the pattern and the imaging layer. DSS, of course, can live with that construction but can also live with the actual words that the district court used in the claim construction order but simply overruling the court's resolution as a matter of claim scope. This wasn't a matter of application or summary judgment or facts. It was a matter of the scope of the claims, that the claims are limited to the layer material. But the problem is, as you know, is that the term scope is a word that almost perfectly straddles a line, if you want to even call it a line, between claim construction and application. We get cases all of the time in which there's agreed upon words as the claim construction and because they're completely agreed upon and nothing else, the appellate system has no choice but to say, well, if there's dispute among the experts about how those words could apply, it must be a fact question. But did you go beyond saying these words of your claim construction district court should be altered to clarify, to use a phrase like the one I threw out there, you know, immediately or indirectly or something as a substitute for, as a clarification of the term to form? Sure. So we did it. We had the claim construction hearing transcript and as Judge Clevenger mentioned, DSS said, and it was actually me so I know what it was, said we agree with the caveat that it essentially in substance is our construction. If the court disagrees with that, I can present argument to address it. And Judge Payne said, well, how about I ask Mr. Barbaro if he disputes that? Mr. Barbaro said, yes, there is a claim scope dispute. And we argued that dispute. And so in that portion, I believe we mentioned, you know, it preserved our prior construction that we had proposed, although we could live with the court's proposed construction. So what happens in these proceedings is the district court judge gives you a list of preliminary constructions. You look at them and say, OK, we're going to get to trial on these or not. And we looked at that one and said we can get to trial on that so long as, and we raised that claim scope dispute there. And under the defendant's view, we should have sat on it had it come up in summary judgment and expert reports and burned all of that time before we could have preserved it on appeal. But we resolved it and the court resolved it as a matter of claim construction. If there were an issue about application and scope of the claims, there would be Rule 56 problems with the court's order. There was no notice of that, that our infringement case was getting resolved on a fact issue. There would be 7th Amendment issues. And of course, that isn't what happened. The court resolved it as a matter of claim construction. Unless the court has any further questions, thank you. Thank you, Mr. Hart. Thank you. Thank you to all counsel. Case is submitted.